**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NOS. A-1785-18T2
                 A-1786-18T2

CHANA RINGEL and
CR LAKEWOOD, LLC,
individually, and derivatively
on behalf of BCR LAKEWOOD
HOLDINGS, LLC,

       Plaintiffs-Respondents,

v.

BR LAKEWOOD, LLC and
BENJAMIN RINGEL,

       Defendants-Appellants.

_____

CHANA RINGEL, individually,
and derivatively on behalf of BCR
OAKRIDGE, LLC,

       Plaintiffs-Respondents,

v.

BENJAMIN RINGEL, and SUNSET
HILL OAKRIDGE PLAZA, LLC,

       Defendants-Appellants.

_____

Argued telephonically April 21, 2020 –
Decided June 17, 2020

Before Judges Yannotti, Currier and Firko.

On appeal from the Superior Court of New Jersey,
Chancery Division, Ocean County, Docket Nos. C-
000127-15 and C-000152-16.

Bruce H. Nagel argued the cause for appellants (Nagel
Rice, LLP, attorneys; Bruce H. Nagel and Robert H.
Solomon, of counsel and on the briefs).

Matthew N. Fiorovanti argued the cause for
respondents (Giordano, Halleran & Ciesla, PC, and
Koffsky Schwalb, LLC, attorneys; Matthew N.
Fiorovanti and Efrem Schwalb, on the briefs).

PER CURIAM

In these back-to-back appeals, defendants[1] appeal from the December 7,

2018 orders denying their motions to dismiss the complaint and compel

arbitration. The Chancery court concluded defendants waived their right to

arbitration. We agree and affirm.

Plaintiff Chana Ringel and defendant Benjamin Ringel are siblings who

purchased a shopping center (Oakridge property) from their father in 2004.

---

[1] We refer to defendants in both cases collectively as "defendants." Otherwise
we refer to them as the Lakewood defendants and the Oakridge defendants when
discussing the individual cases.

A-1785-18T2

They established BCR Oakridge, LLC to serve as the holding company for the property. In 2010, Chana and Benjamin purchased a collection of properties (Lakewood properties) from various revocable trusts set up by their father. BCR Lakewood Holdings, LLC was formed to serve as the holding company for the Lakewood properties.

The operating agreements for both holding companies include a dispute resolution procedure. In essence, if Chana and Benjamin are unable to resolve an issue regarding the management of the business, their respective positions on the issue are submitted to an arbitrator for a binding determination on which position is in the best interest of the business.

In June 2015, plaintiffs filed a verified complaint against Benjamin and BR Lakewood, LLC (Lakewood matter), alleging Benjamin mismanaged BCR Lakewood and engaged in self-dealing. In its answer, the Lakewood defendants raised multiple affirmative defenses, including dismissing the complaint and compelling arbitration under the operating agreement. A counterclaim also included a request for enforcement of the arbitration clause.

In July 2016, plaintiffs filed a verified complaint against Benjamin and Sunset Hill Oakridge Plaza, LLC (Oakridge matter). The complaint alleged that Benjamin mismanaged BCR Oakridge, resulting in the foreclosure of the

3

Oakridge property. In addition, Benjamin, through Sunset, later purchased the Oakridge property at a sheriff's sale without notifying Chana. The Oakridge defendants' answer and counterclaim did not raise the arbitration agreement as an affirmative defense.

The parties engaged in extensive litigation in both cases for the next two years, including the exchange of written discovery, and multiple motions concerning the production of financial documents. In the Oakridge matter, the court held numerous case management conferences, resulting in the issuance of five case management orders. The October 26, 2018 order set a trial date for June 25, 2019.

In the Lakewood matter, multiple motions were filed concerning the court's appointment of a special fiscal agent and the agent's role in the litigation. The court ruled on discovery and summary judgment motions and issued six case management orders. The October 26, 2018 order also scheduled trial for June 25, 2019.

Defendants moved in October and November 2018 to dismiss the Lakewood and Oakridge matters and compel arbitration. Plaintiffs opposed the motions, asserting that defendants had waived their right to arbitration as established under Cole v. Jersey City Med. Ctr., 215 N.J. 265 (2013).

In addressing the Cole factors, plaintiffs noted forty-one months had elapsed between the filing of the Lakewood complaint and defendants' application; twenty-seven months had passed since the filing of the Oakridge complaint. They also described the extensive discovery and protracted motion practice in the litigations, causing them to incur substantial financial expense. In addition, plaintiffs pointed out that in the Oakridge matter, defendants did not raise arbitration as an affirmative defense.

In response, defendants refuted plaintiffs' arguments. They also asserted, that as an Orthodox Jew, Benjamin held a religious belief that it was his obligation not to litigate in a secular court against another Jewish person. Benjamin explained that was the reason why he delayed asserting his right to arbitration.

In its December 7, 2018 decision denying defendants' motions, the Chancery court referenced the Cole factors, stating:

> The question is whether the parties have waived arbitration through their actions. In determining whether a party has waived its right to compel arbitration, . . . [t]he [c]ourt must weigh a series of factors, examining those factors in the[ir] context and based upon a totality of the circumstances to make a decision.
>
> . . . .

A-1785-18T2

As plaintiff[s] rightly point[] out, there has been a significant delay in making the arbitration request, . . . on the defendant[s'] behalf. The defendant[s] have continued to make motions in this case, litigating it . . . as if they were not anticipating moving to arbitration.

Relating to the third and fourth factor, discovery has certainly been conducted in this case. Again, to the uninitiated it may appear that the delay in . . . the request to arbitrate may be a part of the litigation strategy.

I'll note that Ben[jamin] is a sophisticated party. As he noted in his certification, he participated in litigation with his father and his uncle for [twenty-one] years. He's also involved in . . . numerous commercial real estate operations.

Presumably, in filing this complaint and consulting with his lawyer, they discussed . . . the high value that he's placed on the religious aspects of litigating against one's sister, that he had to consider this . . . greatly at the beginning of this initiation of this litigation, and with consultation with his lawyer chose to not pursue the arbitration early on. It can only be assumed by the [c]ourt that this was a litigation strategy.

I would also note that . . . much of the litigation involved in this matter also involves finance or the surrounding issues involve finance. And, presumably, the availability of finance . . . may have been a consideration and a tactic in delay in this matter.

Under the circumstances, I'm satisfied . . . that factor does weigh against transferring the matter [to arbitration]. Moreover, arbitration . . . was not raised [as] an affirmative defense in defendant[s'] answer.

6

And, finally, there is . . . a pending trial date in this case. As in <u>Cole</u>, a trial date has been set. [P]ermitting arbitration at this time would without doubt prejudice the plaintiff[s].

I'll note that, further, . . . reviewing . . . those factors, with regard to the filing of the motions, particularly dispositive motions in the matter, there have been multiple lawyers . . . for Ben[jamin]. There has been a lengthy discovery over . . . three years in one case, two years in the other case. There . . . have been applications to [transfer the case to the Law Division]. . . .

All of these things had to [be weighed] and the [c]ourt finds that at . . . this late date, that permitting arbitration would be a prejudice to the plaintiffs having spent the time, and effort in conducting discovery and preparing for trial, and the extraordinary . . . efforts that were taken in obtaining the discovery . . . .

In their reply defendants argue that litigating this case in a secular court would create undue entanglement between government and religion in violation of the establishment clause. . . . Deciding the case at hand does not require this [c]ourt to determine religious law. In essence, Ben[jamin] has accused Chana of violating secular prohibitions and the mere fact that Ben[jamin] . . . is religious and Chana is religious, a fact that this [c]ourt does not doubt, it does not entitle them to arbitration.

The allegations are straightforward. The allegations are founded in the law as applied to the business entities and . . . the parties' cross-claims allege violations of fiduciary duties . . . involved with the

7

business entities and don't have any religious aspects at all.

The [c]ourt is satisfied that it can decide this case without having to entangle itself with any religious doctrine . . . and at this time it would [be] inappropriate for this [c]ourt to compel arbitration. Likewise, the [c]ourt will not stay the matter.

On appeal, defendants contend the court (1) exceeded its jurisdiction in determining defendants waived their right to compel arbitration; and (2) erred in finding defendants waived their right to compel arbitration without conducting an evidentiary hearing. We are unconvinced by these arguments.

In Cole, the Court established factors for a court, not an arbitrator, to evaluate in assessing whether a party to an arbitration agreement waived its right to arbitrate. 215 N.J. at 280 (citations omitted). Therefore, defendants' argument that the trial court lacked jurisdiction to determine the waiver issue is without merit.

Our review of the court's decision is de novo. Id. at 275 (citations omitted). However, "the factual findings underlying the waiver determination are entitled to deference and are subject to review for clear error." Ibid. (citing Rova Farms Resort, Inc. v. Inv'rs Ins. Co. of Am., 65 N.J. 474, 483-84 (1974)). In conducting our review, we are governed by the principles established in Cole.

"Any assessment of whether a party to an arbitration agreement has waived that remedy must focus on the totality of the circumstances." Id. at 280. "In deciding whether a party . . . waived its right to arbitrate, [a court] concentrate[s] on the party's litigation conduct to determine if it is consistent with its reserved right to arbitrate the dispute." Ibid. The following factors should also be considered:

> (1) the delay in making the arbitration request; (2) the filing of any motions, particularly dispositive motions, and their outcomes; (3) whether the delay in seeking arbitration was part of the party's litigation strategy; (4) the extent of discovery conducted; (5) whether the party raised the arbitration issue in its pleadings, particularly as an affirmative defense, or provided other notification of its intent to seek arbitration; (6) the proximity of the date on which the party sought arbitration to the date of trial; and (7) the resulting prejudice suffered by the other party, if any.
>
> [Id. at 280-81.]

In addition, a court will find waiver occurred "if arbitration is simply asserted in the answer and no other measures are taken to preserve the affirmative defense." Id. at 281 (citations omitted).

We turn to the court's findings underlying the waiver determination in this case. In considering the delay in requesting arbitration, the court noted the considerable length of time between the start of litigation and defendants'

motion to compel arbitration. The delay was forty-one months in the Lakewood matter and twenty-seven months in the Oakridge matter.

The court addressed factor two in stating defendants filed dispositive motions. The record reflects defendants filed a motion for partial summary judgment and a compelled buyout of plaintiffs' interests, in addition to nine other applications, in the Lakewood matter. In the Oakridge litigation, defendants filed a motion to transfer the case to the Law Division.

In considering factor three, the court found the delay in requesting arbitration was part of a litigation strategy. In light of our deferential standard given to the trial court's fact-finding, we cannot discern any error in this conclusion reached after presiding over this contentious litigation for more than three years. Moreover, defendants filed the motion to compel arbitration shortly after the court sanctioned them in the Oakridge matter for failing to comply with discovery orders.

The trial court acknowledged the extensive discovery conducted by the parties in his assessment of factor four. Thousands of documents had been exchanged. Written discovery had concluded in the Lakewood case.

Under factor five, the court noted defendants only raised the arbitration agreement as an affirmative defense and counterclaim in the Lakewood matter.

A-1785-18T2

However, as stated above, defendants did not pursue arbitration until forty-one months after the initiation of that suit. In addressing factor six, the court observed there was a scheduled trial date in both cases.

Finally, in considering factor seven, the court concluded that plaintiffs would be prejudiced if required to go to arbitration because of the time and "extraordinary" effort expended in conducting discovery and in preparing for trial. The trial court's finding comports with the guidance enunciated on this factor in Cole: "If we define prejudice as '"the inherent unfairness—in terms of delay, expense, or damage to a party's legal position—[then prejudice] occurs when the party's opponent forces it to litigate an issue and later seeks to arbitrate that same issue."'" 215 N.J. at 282 (alteration in original) (quoting PPG Indus. v. Webster Auto Parts, 128 F.3d 103, 107 (2d Cir. 1997)).

We discern no error in the court's finding that the Cole factors weighed in favor of plaintiffs. We reject defendants' assertion that the court erred in not holding an evidentiary hearing. Defendants did not request an evidentiary hearing before the Chancery court. They did not raise this issue until the appeal. Moreover, defendants have not presented this court with any information that might have been gleaned from a hearing. We are satisfied there was sufficient

evidence in the record to support the court's conclusion that defendants waived their right to arbitration, requiring a denial of the motion to compel arbitration.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1785-18T2